IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| TERESA FLORES HERNANDEZ, | ) | |
| | ) | No. 41230-0-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BORTON AND SONS, INC., | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

STAAB, C.J. — Teresa Flores-Hernandez appeals the Franklin County Superior Court's order affirming the Board of Industrial Insurance Appeals' (Board) decision in her workers' compensation claim. The Board determined that her self-insured employer, Borton and Sons, Inc. (Borton), was not responsible for several disputed conditions because they were not proximately caused or aggravated by Flores-Hernandez's 2017 industrial injury.

On appeal, Flores-Hernandez assigns error to two findings: (1) that the disputed conditions were not proximately caused or aggravated by the July 2017 injury, and (2) that Flores-Hernandez's attending provider testified the disputed conditions "could have been" aggravated by the 2017 injury. In essence, Flores-Hernandez argues these findings are not supported by substantial evidence and contends the court should have given

special consideration to her attending provider's testimony. She also requests an award of attorney fees under RCW 51.52.130 should she prevail on appeal.

We reject Flores-Hernandez's arguments and affirm. Substantial evidence supports the challenged findings, and the trial court expressly gave the attending provider's testimony special consideration. Because Flores-Hernandez does not prevail, we decline to award her attorney fees under RCW 51.52.130.

BACKGROUND

The following facts and procedural history are largely based on the superior court's unchallenged findings of fact.

Teresa Flores-Hernandez worked as an agricultural laborer for approximately 15 years. In November 2016, she suffered a workplace injury to her back. That injury is not the subject of this appeal.

In July 2017, Flores-Hernandez was injured again in the course of her employment. While working for Borton as a parking lot attendant, she lost sensation in her legs, then slipped, fell, twisted her foot, and broke a toe on her right foot.

Flores-Hernandez sought treatment with her attending provider, Advanced Registered Nurse Practitioner Tracey Glenn, who also treated Flores-Hernandez after her 2016 injury. Nurse Glenn diagnosed Flores-Hernandez with right and left ankle sprains, secondary piriformis syndrome with lesion of the sciatic nerve, lumbar radiculitis, sacroiliac joint arthropathy, and facet joint arthropathy. Nurse Glenn concluded these

2

conditions, with the exception of the right and left ankle sprains, preexisted the 2017

injury based on imaging of Flores-Hernandez taken before the 2017 injury.

*Department Proceedings*

Flores-Hernandez filed a workers' compensation claim for these conditions, and

the claim was initially allowed. However, the Department of Labor and Industries (the

Department) subsequently issued an order determining that Borton was not responsible

for the preexisting conditions because the conditions were not proximately caused or

aggravated by the 2017 injury. Specifically, the conditions the Department determined

Borton was not responsible for and at issue in this appeal are: piriformis syndrome with

lesion of the sciatic nerve, sacroiliac joint arthropathy, facet joint arthropathy, mild to

moderate facet arthropathy at L4-S1, and L4-5 radiculopathy (the "disputed conditions").

*Board Proceedings*

Flores-Hernandez appealed the Department's order to the Board. An Industrial

Appeals Judge (IAJ) held a telephonic hearing on Flores-Hernandez's appeal.[1] Nurse

Glenn testified for Flores-Hernandez. Nurse Glenn explained that, when making her

diagnoses, she relied on an MRI[2] of Flores-Hernandez's lumbar spine and an EMG[3]

nerve conduction study, both performed months before the 2017 injury. Nurse Glenn

---

[1] The hearing concerned three discreet issues related to two different appeals, only one of which is relevant to this appeal.
[2] Magnetic Resonance Imaging.
[3] Electromyography.

3

testified that the MRI showed mild to moderate bilateral facet arthropathy at L4-5 and
L5-S1, and that the EMG showed radiculopathy and other nerve damage. After
answering additional questions on direct examination, the following exchange occurred:

> Q [Flores-Hernandez's attorney]. Nurse Practitioner Glenn, I failed to ask
> you this. But the diagnoses of lumbar radiculitis, left and right ankle
> sprains, the secondary piriformis syndrome with the lesion of the sciatic
> nerve, the sacroiliac joint arthropathy, bilaterally, and the facet joint
> arthropathy at L4-5 and L5-Sl, do you feel on a more probable than not
> medical basis that those conditions were proximately caused or
> aggravated by Ms. Flores's July 3rd, 2017, industrial injury?
>
> . . . .
>
> A. Yes.
>
> Q. And why did you feel like they were either caused or aggravated by this
> July 3rd, 2017, industrial injury?
>
> A. Going back to the objective findings of the MRI and the EMG, the
> description of the history of the injury, there was no reason to find
> otherwise.
>
> Q. And so it sounds like the MRI was taken prior to her July 3rd, 2017,
> injury, as well as the nerve conduction study. *So I guess just for clarity
> sake, it's your opinion that this July 3rd, 2017, industrial injury
> aggravated those conditions?*
>
> A. So given that we know from the previous claim, SH29971, with a date
> of injury 11/15/16, and the fact that we did have that testing available at
> that time with those results, for both the MRI and the nerve study, *I do
> believe on a more probable than not basis that this definitely could have
> been an aggravation based on that.*

Clerk's Papers (CP) at 333-34 (emphasis added).

In its defense, Borton presented testimony from four physicians. Orthopedic
surgeon James Hazel, MD, performed three independent medical examinations on Flores-
Hernandez, including one after the 2016 injury and two following the July 2017 injury.

After his first examination (following Flores-Hernandez's 2016 injury), Dr. Hazel diagnosed a lumbar strain. Following his second examination (following Flores-Hernandez's 2017 injury), Dr. Hazel diagnosed lower back pain and lower extremity paresthesia and dysesthesia but opined that those diagnoses were not related to Flores-Hernandez's 2017 injury. Following his third examination, Dr. Hazel made the same findings as his prior examinations. Dr. Hazel also testified that he did not diagnose piriformis syndrome with lesion of the sciatic nerve, sacroiliac joint arthropathy, facet joint arthropathy, or mild to moderate facet arthropathy L4-S1 and L4-5 radiculopathy and that they were therefore not caused by or aggravated by Flores-Hernandez's 2017 injury.

Orthopedic spine surgeon Kenneth Bode, MD, performed an independent medical examination of Flores-Hernandez after her 2017 injury, and reviewed her medical records, imaging, and the claim related reports. Dr. Bode diagnosed a right foot contusion with a right P-1 fracture and lumbar strain, which he opined were caused by the 2017 injury. Dr. Bode also diagnosed facet arthropathy, although he did not think it was caused by or aggravated by the 2017 injury. Dr. Bode further diagnosed mild to moderate facet arthropathy at L4-S1, which he believed was preexisting, and testified there was no objective evidence the condition worsened after the July 2017 injury. Dr. Bode did not diagnose piriformis syndrome with lesion of the sciatic nerve, sacroiliac joint arthropathy, nor L4-5 radiculopathy.

Linda Wray, MD, a board-certified neurologist, conducted an independent medical examination of Flores-Hernandez after the 2017 injury, reviewed relevant records, reports, and imaging, and found no atrophy in Flores-Hernandez's arms or legs. Dr. Wray reported that testing was complicated by poor effort, but with repeated testing, she concluded that Flores-Hernandez demonstrated normal strength and normal reflexes, which Dr. Wray described as "an objectively normal neurologic exam." CP at 600.

Orthopedist Eric Rudd, MD, conducted two examinations of Flores-Hernandez, one before the 2017 injury and one after. He testified that Flores-Hernandez's MRI provided no explanation for the pain reported in her legs. Dr. Rudd also found no evidence of radiculopathy. Dr. Rudd also thought the EMG study was a "false positive" and that Flores-Hernandez might be embellishing her symptoms.

The IAJ subsequently issued a proposed decision and order, containing the following findings relevant to this appeal:

> 2. Teresa Flores-Hernandez sustained an industrial injury while working for Borton & Sons, Inc. on July 3, 2017, when she lost sensation in her legs, slipped, and twisted her foot. She sustained left and right ankle sprains, a right foot contusion with a non-displaced fracture in the third proximal phalanx of the right foot, a lumbar strain, and lumbosacral sprain.
>
>  . . . .
>
> 4. Ms. Flores-Hernandez's conditions diagnosed as piriformis syndrome with lesion of the sciatic nerve, sacroiliac joint arthropathy, facet joint arthropathy, mild to moderate facet arthropathy L4-S1, and L4-5

6

      radiculopathy were not proximately caused or aggravated by her
      industrial injury.

CP at 66. Based on these findings, the IAJ affirmed the Department's order denying

Borton's responsibility for the disputed conditions.

      Both parties filed petitions for review. However, the Board denied both petitions

and adopted the IAJ's proposed decision and order as its final order.

*Superior Court Proceedings*

      Flores-Hernandez appealed the Board's final order to Franklin County Superior

Court. Following a hearing on the appeal, the court took the matter under advisement

and later entered a written order containing its findings and conclusions. Relevant here,

the court acknowledged its obligation to give special consideration to the attending

provider's testimony and found it did so. The court nevertheless concluded Nurse

Glenn's testimony did not establish that the July 2017 industrial injury was, more likely

than not, a cause or aggravator of the disputed conditions, citing Nurse Glenn's testimony

that the injury "could have" aggravated the disputed conditions. The court further found

Borton's expert testimony contradicted Nurse Glenn's testimony, credited Borton's

experts over Nurse Glenn, and ultimately concluded Flores-Hernandez did not meet her

burden to reverse the Board's final order.

      Flores-Hernandez appeals.

7

No. 41230-0-III
*Flores-Hernandez v. Borton & Sons, Inc.*

ANALYSIS

1.  WHETHER THE FINDINGS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE.

Flores-Hernandez assigns error to two of the trial court's findings, (1) that the disputed conditions were not proximately caused or aggravated by the 2017 injury, and (2) that Nurse Glenn testified that the disputed conditions "could have been" aggravated by the 2017 injury. Flores-Hernandez argues the disputed conditions were proximately caused by the 2017 injury, contrary to the trial court's finding. She also argues the trial court should have given Nurse Glenn's testimony special consideration, as she was Flores-Hernandez's attending physician. In response, Borton contends substantial evidence supports the trial court's findings and the court properly gave special consideration to Nurse Glenn's testimony. We agree with Borton.

"An injury is compensable under the [Industrial Insurance Act, Title 51 RCW,] if it occurs in the course of employment and a causal relationship between the injury and the condition for which compensation is sought is established by sufficient medical testimony." *Goyne v. Quincy-Columbia Basin Irr. Dist.*, 80 Wn. App. 676, 682, 910 P.2d 1321 (1996). "To prove causation, the claimant's medical experts must establish that it is 'more probable than not that the industrial injury caused the subsequent disability.'" *Loushin v. ITT Rayonier*, 84 Wn. App. 113, 122, 924 P.2d 953 (1996) (quoting *Zipp v. Seattle Sch. Dist. No. 1*, 36 Wn. App. 598, 601, 676 P.2d 538 (1984)). "For an

8

aggravation claim, medical testimony must establish, more probably than not, that the worsening of the condition is causally related to the industrial injury." *Id*.

A worker aggrieved by a Department decision on a workers' compensation claim may appeal to the Board. RCW 51.52.060(1)(a), .050(2)(a). Board decisions may then be appealed to the superior court, which reviews the Board's decision de novo. RCW 51.52.110, .115; *Grimes v. Lakeside Indus.*, 78 Wn. App. 554, 560, 897 P.2d 431 (1995). The Board's findings and decision are presumed correct unless the superior court finds otherwise by a preponderance of the evidence. *Dep't of Lab. & Indus. v. Moser*, 35 Wn. App. 204, 208, 665 P.2d 926 (1983).

The superior court's decision may then be appealed to this court. RCW 51.52.140. On appeal, we review whether the superior court's findings are supported by substantial evidence and whether those findings support the conclusions of law. *Du Pont v. Dep't of Lab. & Indus.*, 46 Wn. App. 471, 476-77, 730 P.2d 1345 (1986). "Substantial evidence" is evidence sufficient to persuade a rational, fair-minded person that the finding is true. *Cantu v. Dep't of Lab. & Indus.*, 168 Wn. App. 14, 21, 277 P.3d 685 (2012). Unchallenged findings are verities on appeal. *Davis v. Dep't of Lab. & Indus.*, 94 Wn.2d 119, 123, 615 P.2d 1279 (1980).

As part of our review, we do not substitute our judgment for that of the trial court, nor do we weigh the evidence or the credibility of witnesses. *Id.* at 124. "We review the

record in the light most favorable to the party who prevailed in superior court."

*Hendrickson v. Dep't of Lab. & Indus.*, 2 Wn. App. 2d 343, 352, 409 P.3d 1162 (2018).

Flores-Hernandez's arguments on appeal largely amount to a request that this court reweigh the competing medical testimony and credit Nurse Glenn's testimony over the testimony of Borton's experts. But we do not weigh evidence or assess witness credibility on appeal. *Davis*, 94 Wn.2d at 124. Rather, our task is limited to determining whether substantial evidence supports the challenged findings and whether those findings support the conclusions of law. *Du Pont*, 46 Wn. App. at 476-77. In this case we conclude that substantial evidence supports the challenged findings.

First, substantial evidence supports the trial court's finding that the disputed conditions were not proximately caused by or aggravated by the 2017 injury. As the court found, Dr. Hazel examined Flores-Hernandez multiple times and testified he did not diagnose piriformis syndrome with lesion of the sciatic nerve, sacroiliac joint arthropathy, facet joint arthropathy, mild to moderate facet arthropathy at L4-S1, or L4-5 radiculopathy because he did not believe she had those conditions as a result of her 2017 injury.

The court further found Dr. Bode attributed lumbar strain and right-foot injuries to the July 2017 incident but testified that any facet arthropathy was preexisting and there was no objective evidence the condition worsened after the injury, and he did not diagnose piriformis syndrome, sacroiliac joint arthropathy, or L4-5 radiculopathy. The

court also found Dr. Wray's testing culminated in "an objectively normal neurologic exam," and Dr. Rudd found no evidence of radiculopathy, believed the EMG was a "false positive," and testified the MRI provided no explanation for the leg pain Flores-Hernandez reported. CP at 600-02.

Flores-Hernandez does not assign error to these findings; thus, they are verities on appeal. *Davis*, 94 Wn.2d at 123. Taken together, the evidence is sufficient to persuade a rational, fair-minded person of the truth of the superior court's finding that the disputed conditions were not proximately caused or aggravated by the 2017 injury.

Although a closer question, substantial evidence also supports the trial court's finding that Nurse Glenn opined the July 2017 injury "could have" aggravated the disputed conditions. On direct examination, Glenn initially answered "[y]es" when asked whether, on a more probable than not basis, the disputed conditions were proximately caused or aggravated by the 2017 injury. But counsel then clarified that the EMG and MRI nerve conduction study Nurse Glenn referenced predated the 2017 injury and asked specifically whether the 2017 injury aggravated the disputed conditions. Nurse Glenn responded that she believed, "on a more probable than not basis," that the 2017 injury "definitely could have been an aggravation." CP at 334.

Because Nurse Glenn expressly used "could have been an aggravation" in describing her opinion about the disputed conditions, the trial court could reasonably characterize her testimony as stating the 2017 injury "could have" aggravated the

11

disputed conditions. Any tension between Nurse Glenn's initial "[y]es" answer and her later clarification went to the weight of the testimony, which the trial court—not this court—is tasked with evaluating. *Davis*, 94 Wn.2d at 124. Because Nurse Glenn expressly stated that the disputed conditions "could have been an aggravation" based on the 2017 injury, substantial evidence supports the trial court's finding that Nurse Glenn opined the injury "could have" aggravated the disputed conditions.

Relatedly, Flores-Hernandez contends the trial court was required to give Nurse Glenn's testimony special consideration. But, as Borton points out, the trial court explicitly indicated it gave Nurse Glenn's testimony special consideration when reaching its decision.

It is a long standing rule that courts should give special consideration "to the opinion of a [worker compensation] claimant's attending physician." *Hamilton v. Dep't of Lab. & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988). This rule, however, "does not require the [fact finder] to give more weight or credibility to the attending physician's testimony but to give it careful thought." *Id.* at 572. If a court believes the testimony of an examining physician over that of the attending physician, it should indicate in its findings this "special consideration" rule and why the examining physician's testimony is preferrable over the attending physician's testimony. *Groff v. Dep't of Lab. & Indus.*, 65 Wn.2d 35, 45, 395 P.2d 633 (1964).

Here, the trial court entered explicit findings acknowledging the "special consideration" rule and explaining its reasons for why it believed Borton's witnesses over Nurse Glenn. Under our case law, this is all that was required.

Substantial evidence supports the trial court's challenged findings, and the trial court properly gave special consideration to the attending provider in this case.

**2.** ATTORNEY FEES ON APPEAL

Flores-Hernandez requests an award of reasonable attorney fees under RCW 51.52.130.

RCW 51.52.130(1) provides that, "[i]f, on appeal to the superior or appellate court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary . . . a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court." "The statute allows the court to fix attorney fees if the court reverses the [Board]'s order and grants an award to the disabled worker." *Jenkins v. Weyerhaeuser Co.*, 143 Wn. App. 246, 257, 177 P.3d 180 (2008). "RCW 51.52.130 encompasses fees in both the superior and appellate courts when both courts review the matter." *Conner v. Harrison Med. Ctr.*, 11 Wn. App. 2d 467, 478, 454 P.3d 131 (2019).

Here, because we affirm the superior court's decision upholding the Board's final order, Flores-Hernandez has not satisfied the prerequisite to obtain relief under RCW 51.52.130(1). We therefore decline Flores-Hernandez's request for attorney fees.

No. 41230-0-III

*Flores-Hernandez v. Borton & Sons, Inc.*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Staab, C.J.

WE CONCUR:

_____
Hill, J.

_____
Cooney, J.